## Richmond

CLARENCE BYRON SNEAD, JR. v. COMMONWEALTH OF VIRGINIA.

April 23, 1973.

Record No. 8090.

Present, All the Justices.

*E. Brodnax Haskins*, for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Per Curiam.

Clarence Byron Snead, Jr. appeals his conviction of murder in the second degree and complains that certain statements made by the trial judge to the jury were prejudicial.

Snead was indicted for the murder of Herbert Clifton Brockwell. The Commonwealth alleged that the homicide occurred in the City of Richmond about 3 P. M. on Wednesday, January 19, 1972. Snead was arrested on an unrelated charge of drunken driving about one hour later. Brockwell's body was found on Saturday, January 22, 1972 about 8:30 P. M.

Dr. Russell C. Henry, medical examiner for the city, examined Brockwell's body and stated that the deceased died as a result of a gunshot wound in his back. Dr. Henry was of the opinion that death

occurred no more than 48 hours prior to the time of his examination which was at 10:45 P. M. on January 22nd. When asked if Brockwell could have been dead on January 17th, 18th, 19th or 20th he answered in the negative. Later, however, he was unwilling to testify that Brockwell was not dead on January 19th and said that, although he thought that Brockwell was probably killed the day before he first saw him, he had no way of knowing this. He also said he did not know when Brockwell was killed but that his death on January 19th would be consistent with his findings.

The testimony of the medical examiner figured prominently in the case for the reason that Snead was held in the city jail from the time of his arrest, approximately 4:30 P. M. on January 19th, until after the murder of Brockwell was reported and his body found. The Commonwealth's principal witness, Margie Womack, who was present when the homicide occurred, testified that the shooting took place after lunch on January 19th.

After the jury had deliberated for one hour and twenty minutes it returned and requested that the trial judge permit the court reporter to read the testimony given by Dr. Henry. The judge inquired: "Well, gentlemen, is your question about what day the defendant—the victim, I mean the day he died on?" Upon receiving an affirmative answer the following occurred:

"THE COURT: I instruct you that as a matter of law it isn't important—that it is not important if that is a matter that you are hung up on. I think that you are going to be hung for some time and I am going to adjourn you over until tomorrow morning. Whether it was one day or the other is not important to this case. The doctor gave it from my recollection—

"MR. HASKINS: I object to any comments—

"THE COURT: I know you object to it. The doctor gave it as his opinion that what time—as a matter of law it is not important in this case whether he died on one day or another.

"MR. HASKINS: We object to that admonition. We don't think that is the law."

Following this exchange, the judge went on to say again, ". . . as a matter of law, whether it is one day or another is not important to this case", observing that the indictment could have stated that the murder occurred "on or about" a certain day, and that while the in-

dictment charged the offense as having occurred on the 19th, that in itself was not fatal. Counsel for the defendant moved for a mistrial upon the ground that the jury "may have drawn an incorrect inference as to the testimony of Dr. Henry in this case which may well prejudice the accused".

The medical examiner's testimony was important for had the jury agreed with Dr. Henry's "best estimate" that Brockwell was shot within 48 hours before 10:45 P. M. on January 22, 1972, it would necessarily have acquitted defendant. The jury was concerned with the factual discrepancy in Dr. Henry's testimony. The language and form of the indictment were not in dispute. The statement of the trial court was thus incorrect and potentially misleading, but we do not find that it constituted reversible error.

At the time of Snead's arrest Wednesday afternoon, January 19th, he became disorderly and threatened the arresting officer. Patrolman Finney said that "Snead stated to me that he had killed one man that day and that I should be worried for myself". When arrested Snead was accompanied by Margie Womack, who had also been drinking. No charges were placed against her and she was permitted to leave the scene.

On Saturday, January 22, 1972, about 8:30 P. M., Richmond city police, responding to an anonymous telephone call, located the body of Herbert Clifton Brockwell in the James River under a gangplank between the river bank and a houseboat formerly occupied by Brockwell and Margie Womack. Detective H. W. Duke testified that on Sunday, January 23, 1972, Snead was interviewed in the city jail where he was being held under the drunk driving charge. Police officers had previously received information of Snead's possible involvement in the Brockwell murder. Duke said that after he had advised Snead of his constitutional rights, the defendant stated: "I don't know anything about any killing. I have never killed anyone." The officer then terminated the interview. However, immediately following it Duke was able to locate Mrs. Womack and as a result of information obtained from her he decided to charge Snead with Brockwell's murder. Duke returned to the city jail and, after again advising Snead of his constitutional rights, told him that he was being charged with the murder of Brockwell. Duke testified that Snead then made the following statement: "Mr. Duke, you don't know all the facts about this. That man came at me with a pitchfork and I shot him." Duke answered Snead as follows: "Well, you tell me one thing . . . if he

came at you with a pitchfork, how come he was shot in the back?" Duke said that Snead then responded: "I don't have anything else to say to you until I talk to an attorney."

Margie Womack testified that she lived in the houseboat with Brockwell and on the morning of the day that he was killed, a Wednesday or a Thursday, Snead and Brockwell had an argument. She said that after lunch, when she left the houseboat to get some wood for a laundry heater, she again saw Snead and spoke to him. She stated that en route to the woodshed she heard a shot. According to this witness Brockwell was then "standing right at the steps as you go down the hill to the boat. He had his coat and hat on. I think he was getting ready to go up town". When she heard the shot she said "I turned around and Doll [Brockwell] had his hand on his side"; that as he grabbed his side he said "Junie" [Snead's nickname] and "then he rolled down the hill"; and that after this happened Snead said "Margie, go get some clothes and change your clothes and I will take you away . . . you have not done anything to me. I don't want to hurt you." She made no report of the shooting to the police. When questioned about this she said: "I was frightened . . . I've never seen a man shot before. Never known of it."

The defendant did not testify in his own behalf.

The jury was fully and fairly instructed. It could not have found the defendant guilty had it not believed the testimony of Margie Womack and concluded that Brockwell was murdered by Snead on January 19, 1972, the date charged in the indictment. Her testimony was corroborated by the statements made by defendant while in custody. The testimony of the medical examiner did not foreclose the possibility of Brockwell's murder on that day.

We conclude that the statement of the trial court concerning the importance of the medical examiner's testimony does not constitute reversible error. *See Schneble* v. *Florida*, 405 U. S. 427 (1972); *Reid* v. *Commonwealth*, 213 Va. 790, 195 S. E. 2d 866 (1973) and *Hall* v. *Commonwealth*, 213 Va. 736, 195 S. E. 2d 882 (1973), this day decided.

*Affirmed.*